UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| LORI L. RICHARDSON,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE,<br>**Commissioner of the Social<br>Security Administration,**<br><br>        Defendant. | Case No. EDCV 07-1524 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2]. Plaintiff filed an action for judicial review of a prior decision denying benefits. On December 5, 2006, an order was issued remanding the case to the Commissioner for further administrative proceedings on the ground that the vocational expert's testimony did not constitute substantial evidence supporting the ALJ's finding that plaintiff could perform alternative work.[See JS 2; Administrative Record ("AR") 12-21, 286-293].

On remand, the Administrative Law Judge ("ALJ") conducted a new hearing on August 16, 2007. Plaintiff was represented by counsel during the hearing and testified on her own behalf. Testimony also was received from a vocational expert and a medical expert. [AR 334-346].

On August 31, 2007, the ALJ issued a final written decision again denying benefits. [AR 277-284]. The ALJ incorporated his prior hearing decision dated December 30, 2005 [AR 12-21] by reference into his decision on remand. He also stated that the December 2005 decision "remains the decision of record as supplemented herein. . . ." [AR 278].

In his August 2007 decision, the ALJ found that plaintiff had a severe depressive disorder not otherwise specified ("NOS"), but that she retained the RFC to perform simple repetitive work. The ALJ further found that plaintiff's RFC did not preclude her from performing work available in significant numbers in the national economy. Therefore, the ALJ concluded that plaintiff was not disabled at any time through the date of his decision. [AR 284]. This action followed.

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Treating psychiatrist's opinion**

Plaintiff contends that the ALJ misrepresented a February 5, 2007 psychiatric evaluation report by Dr. Eklund, a treating psychiatrist, and did not provide specific and legitimate reasons for rejecting Dr.

1   Eklund's opinion. [See JS 3-7].

2   On January 7, 2007, plaintiff presented to the San Bernardino County Department of Behavioral
3   Health ("County DBH") with complaints of depression. [AR 323]. She reported that she had received
4   treatment for depression since 2003, when her grandson burned himself with hot coffee while in her care.
5   [AR 323]. Plaintiff said that her grandson's condition subsequently had deteriorated, and that he had
6   developed kidney problems. She said that it had been 8 months since she was last seen by her treating
7   doctor, Dr. Multani, who previously prescribed the antidepressant Lexapro.[1]

8   Plaintiff was referred to Dr. Eklund for a medical evaluation on February 7, 2007. Plaintiff gave a
9   history of depression since 2001. She told Dr. Eklund about her grandson's accidental burn and ensuing
10  complications. On mental status examination, plaintiff was tearful and exhibited a depressed, anxious mood.
11  Her speech was soft. Otherwise, her behavior was within normal limits. She reported having auditory
12  hallucinations.[2] Her thought content was normal. Insight and judgment were fair. Plaintiff was forgetful
13  of recent events. She was oriented to person, place, time, and situation. [AR 322].

14  Dr. Eklund diagnosed major depression, recurrent, severe, with psychotic features, rule out post-
15  traumatic stress disorder. [AR 322]. Plaintiff's current GAF was rated as 45.[3] Dr. Eklund prescribed
16  Seroquel "for sleep & voices" and Lexapro. [AR 322]. Dr. Eklund's monthly progress notes from March,
17  April, and May 2007 indicate that plaintiff was "depressed" and "stressed," reported insomnia, nightmares,
18  and obsessive thoughts about her grandson's accident, and said that she heard voices when she was

---

[1] The record does not contain medical reports documenting any treatment in 2006.

[2] Plaintiff testified that she heard voices saying "code blue, code blue, Gamma, it hurts, it hurts, help me." [AR 345].

[3] A GAF score is a "multiaxial" assessment that clinicians use for "tracking the clinical progress of individuals in global terms" using "a single value that best reflects the individual's overall level" of psychological, social, and occupational (but not physical) functioning. Diagnostic and Statistical Manual of Mental Disorders ("DSM IV") Multiaxial Assessment (4th ed. 1994)(revised 2002); see also Vargas v. Lambert, 159 F.3d 1161, 1164 (9th Cir. 1998)(describing a GAF score as "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment"). The GAF score is the lower of the individual's symptom severity score or functioning severity score. A GAF score of 41 through 50 denotes serious symptoms, such as suicidal ideation or severe obsessional rituals, or any serious impairment in social, occupational, or school functioning, such as the absence of friends or the inability to keep a job. See DSM IV, Multiaxial Assessment 30, 34.

depressed. [AR 318-320]. She told Dr. Eklund that "Lexapro helps me go on" [AR 318], and after discontinuing Seroquel for one month, she asked to restart it. [AR 317-318].

When a treating physician's medical opinion as to the nature and severity of an individual's impairment is well-supported and not inconsistent with other substantial evidence in the record, that opinion must be given controlling weight. Orn v. Astrue, 495 F.3d 625, 631-632 (9th Cir. 2007); Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) ; Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *1-*2. A treating physician's opinion that is contradicted by substantial evidence in the record is not entitled to controlling weight; however, that opinion is "still entitled to deference" and should be evaluated using the factors set forth in the Commissioner's regulations. Orn, 495 F.3d at 632 (quoting SSR 96-2p at 4); see Edlund, 253 F.3d at 1157; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).[4]

The ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The ALJ noted that plaintiff sought mental health treatment at County DBH in January 2007 "after an eight month gap in treatment." [AR 279]. He remarked that

> [a] treating psychiatrist [Dr. Eklund] evaluated the claimant on February 7, 2007, and she reported auditory hallucinations as well as problems with forgetfulness as well as being tearful and depressed, but there was no indication of any cognitive deficits. The treating

---

[4]Those factors include the length of the treatment relationship, the frequency of examination by the treating physician, and the nature and extent of the treatment relationship between the patient and the treating physician. Additional factors relevant to evaluating any medical opinion include the degree to which the opinion is supported by other evidence in the record, the "quality of the explanation provided" by the physician, the consistency of the medical opinion with the record as a whole, the physician's speciality, and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. Orn,495 F.3d at 631; 20 C.F.R. §§ 404 .1527(d)(2)-(6),  416.927(d)(2)-(6).

4

> psychiatrist diagnosed major depressive disorder, recurrent, with psychotic features, assessed a [GAF] score indicating a serious degree of limitation in one area of functioning and an otherwise moderate degree of limitation, and prescribed Seroquel for sleep and auditory hallucination and Lexapro as she had been receiving before.

[AR 280].

The ALJ concluded that "the evidence submitted on remand does not establish any change in" plaintiff's condition as assessed in his December 2005 decision "until January 2007." [AR 280]. The ALJ noted that the medical expert testified that plaintiff's 2007 treatment records showed an improvement in her mental impairment compared with 2005. [AR 280; see AR 341-344]. The medical expert opined that the clinical findings in January and February 2007 were inconsistent with a diagnosis of major depressive disorder as well as with plaintiff's complaints of auditory hallucinations. [AR 280]. The medical expert testified that plaintiff's mental status was "essentially intact" in February 2007. [AR 343]. He opined that plaintiff exhibited "situational depression," and that she was not precluded from performing the simple, repetitive work described by the ALJ . [AR 342-343].

The ALJ concluded that the evidence submitted on remand provided no reason for changing his prior finding that plaintiff had a severe depressive disorder NOS and retained the RFC for simple, repetitive work. [AR 15, 281]. He remarked that even if the 2007 treatment reports from County DBH showed a deterioration in functioning at that point, that evidence would pertain only to plaintiff's condition beginning in January 2007, after an extended period without treatment. [AR 280]. The ALJ concluded that even if plaintiff's condition actually had deteriorated as of January 2007, she had resumed treatment, and nothing in the record indicated that she would be unable to perform at least simple, repetitive work for any continuous 12-month period thereafter. [AR 280].

Contrary to plaintiff's argument, the ALJ did not disregard Dr. Eklund's findings that plaintiff had impaired memory of recent events. [See JS 4]. The ALJ explicitly noted that plaintiff reported auditory hallucinations and forgetfulness of recent events. [AR 280]. The ALJ also did not materially misrepresent Dr. Eklund's reports by saying that plaintiff showed no indication of cognitive deficits. Dr. Eklund documented no abnormalities in plaintiff's thought content or thought process. Her speech was soft but no language abnormalities were noted. [AR 322]. Her memory for immediate and remote events was not

impaired. She was fully oriented. [AR 322]. Her forgetfulness for recent events suggested no more than a mild cognitive impairment

The ALJ also acknowledged that plaintiff's January 2007 GAF score indicated a serious degree of limitation. The GAF score reflects whichever is more severe, the patient's psychological symptoms, or the patient's psychological, social, and occupational functional impairment. DSM IV, Multiaxial Assessment 30, 34. GAF scores may be useful, but they do not translate directly into social security disability ratings, and they are not controlling. See Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (August 21, 2000)(explaining that the Commissioner has not endorsed the use of the GAF scale in the disability insurance and SSI programs, and explaining that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings"); Howard v. Comm'r of Social Sec., 276 F.3d 235, 241 (6th Cir. 2002) (stating that "the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate"). The ALJ acknowledged plaintiff's low GAF score in February 2007, but he permissibly concluded that at worst, the evidence indicated that she was experiencing a temporary exacerbation of her symptoms following a gap in treatment.

Plaintiff's mental status examination findings as a whole and the medical expert's testimony are substantial evidence supporting the ALJ's conclusion that plaintiff's mental impairment in January 2007 had not significantly changed from the period covered by his December 2005 decision, or that her condition had temporarily deteriorated prior to her resumption of treatment. Significantly, plaintiff's briefing does not address the ALJ's December 2005 decision. That decision contains a detailed description of the evidentiary basis for the ALJ's mental RFC finding. The ALJ explained that he relied on the consistent reports of the Commissioner's consultative psychiatrist, Dr. Bagner, and the non-examining state agency psychiatrist, Dr. Jenkins-Phelps, who, in addition to reviewing plaintiff's file, contacted Dr. Multani for clarification of his opinion. [See AR 16-18]. The ALJ's December 2005 decision sets forth specific, legitimate reasons for his rejection of Dr. Multani's disability opinions. The ALJ elaborated somewhat on his assessment of Dr. Multani's opinion in his August 2007 decision:

> The evidence of record does nothing to alter my impression of the opinion of Dr. Multani, the former treating psychiatrist. In fact the record shows that the claimant went without

> treatment for at least eight months before returning for treatment because she felt her condition was deteriorating. It is reasonable to conclude then that the claimant was functioning well when she stopped treatment in early 2006, which better supports my finding of a marginally severe impairment.

[AR 282].

For all of these reasons, plaintiff's contention that the ALJ erred in evaluating the evidence from Dr. Eklund is unpersuasive.

**Hypothetical question**

Plaintiff contends that the ALJ posed an incomplete hypothetical question to the vocational expert because the ALJ did not include Dr. Eklund's finding that plaintiff is "forgetful" regarding recent events. [JS 7-9].

Hypothetical questions posed to the vocational expert must accurately describe all of the limitations and restrictions of claimant that are supported by the record. Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999); Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993). A vocational expert's response to a hypothetical question constitutes substantial evidence only if it is supported by the medical evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

For the reasons described above, the ALJ did not commit legal error in evaluating Dr. Eklund's report or the medical evidence as a whole. Accordingly, plaintiff's contention lacks merit.

**Step 5 burden**

Plaintiff argues that the ALJ's finding that plaintiff retains the RFC to perform alternative work is "problematic" because "the ALJ failed to specify any specific jobs or the related Dictionary of Occupational Titles ("DOT") codes. Therefore, it is impossible to determine what jobs the ALJ actually believes" plaintiff can perform. [JS 10-11].

In support of his step five finding that plaintiff can perform work available in significant numbers in the national economy, the ALJ wrote:

> I asked the vocational expert whether jobs exist in the national economy for an individual with the clainant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to

7

> perform the requirements of representative unskilled light work occupations and that there are thousands of such jobs in the local regional economy and proportionally more in the national economy.
>
> Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
>
> . . . .
>
> A finding of "not disabled" is therefore appropriate under the framework of § 204.00 in the Medical-Vocational guidelines. See also Medical-Vocational Rules 202.14 and 202.21.

[AR 282].

In response to the ALJ's hypothetical question, the vocational expert testified that a hypothetical person under the age of 50 with the same vocational profile as plaintiff could perform the medium, unskilled jobs of bagger (200,000 jobs nationally), packager (45,000 jobs nationally), and assembler (150,000 jobs nationally). [AR 337-338]. The vocational expert did not provide DOT code numbers for those jobs, but the ALJ instructed him to ensure that his testimony was consistent with the DOT (or to advise the ALJ if there was any deviation). [AR 335]. Vocational experts who testify during social security disability hearings usually do provide a DOT number, but the vocational expert's failure to do so in this instance does not deprive the ALJ's decision of substantial support in the record or make it legally erroneous. The court takes judicial notice that the DOT includes the job of "packager, hand," job number 920.587-018, and classifies that job as a medium, "SVP"[5] level 2 job that entails "repetitive or short-cycle work." Among the myriad jobs of assembler in the DOT are the medium, SVP level 2 jobs of "wet wash

---

[5] "SVP" is an acronym for "specific vocational preparation," a term of art used in the DOT to classify "how long it generally takes to learn the job." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990). Unskilled jobs are those that can usually be learned in 30 days or less, corresponding to an SVP level of 1 ("[s]hort demonstration only") or 2 ("[a]nything beyond short demonstration up to and including 1 month"). DOT, Appendix C, "Components of the Definition Trailer" (4th ed. 1991); see Terry, 903 F.2d at 1276 (holding that unskilled jobs are those that have an SVP of 30 days or less); SSR 83-10, WL 31251, at *7 ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.").

1  assembler," job number 361.687-010, and "wax-pattern assembler," job number 518.684-022, both of which
2  also entail "repetitive or short-cycle work."

3        The ALJ did not specifically identify the jobs of bagger, packager, or assembler in his decision, but
4  he referenced and adopted the vocational expert's testimony identifying those jobs, and that is close enough.
5  See Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989)("As a reviewing court, we are not deprived
6  of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").  Furthermore,
7  although plaintiff was 51 at the time of the hearing on remand [AR 338] and the ALJ's hypothetical
8  specified a person under age 50, that difference is immaterial.  At age 51, plaintiff was not yet a person of
9  "advanced age" (55 and above) whose ability to perform unskilled work is considered compromised under
10 the regulations.  See Terry v. Sullivan, 903 F.2d 1272, 1275-1276 (9th Cir. 1990)("[I]t is not enough that
11 persons of advanced age are capable of doing unskilled work; to be not disabled, they must have acquired
12 skills from their past work that are transferable to skilled or semiskilled work.") (citing 20 C.F.R. § 404,
13 Subpart P, App. 2, Rules 201.04-201.08; 20 C.F.R. § 404.1568(d)).  For these reasons, the ALJ's finding
14 that plaintiff's RFC does not preclude her from performing alternative jobs existing in significant numbers
15 in the national economy is based on substantial evidence and is free of legal error.

16 **Credibility finding**

17       Plaintiff contends that the ALJ did not make a proper credibility finding because he "merely
18 summarized Plaintiff's testimony and arbitrarily rejected it without providing adequate reasons." [JS 14-19;
19 AR 282].

20       If the record contains objective evidence of an underlying physical or mental impairment that is
21 reasonably likely to be the source of a claimant's subjective symptoms, the ALJ is required to consider all
22 subjective testimony as to the severity of the symptoms.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir.
23 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a),
24 416.929(a) (explaining how pain and other symptoms are evaluated).   Absent affirmative evidence of
25 malingering, the ALJ must then provide clear and convincing reasons for rejecting a claimant's subjective
26 complaints.  Carmickle v. Comm'r, Soc. Sec.  Admin., 533 F.3d 1155, 1160-1161  (9th Cir. 2008); Greger
27 v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). The ALJ's credibility findings "must be sufficiently specific
28 to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds

and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

As noted above, the ALJ incorporated his December 2005 hearing decision by reference into his August 2007 decision. Plaintiff's testimony during the hearing on remand was cumulative of her earlier hearing testimony. [See AR 18, 254-271, 344-346]. Plaintiff does not contend that the ALJ's December 2005 credibility finding was in error. That decision contains clear and convincing reasons, based on substantial evidence, for the ALJ's assessment of plaintiff's subjective symptoms. [AR 18-19].

In his December 2005 decision, the ALJ permissibly concluded that plaintiff's daily activities were inconsistent with her allegations of debilitating symptoms. Plaintiff testified that she and her husband lived with her son, who worked, and two grandchildren. Plaintiff said that her husband took an early retirement to care for her six year-old chronically ill grandson, who had seizures and was undergoing chemotherapy. Plaintiff, however, also testified that she actively participated in her grandson's care. She said that her grandson went to kindergarten in the morning, and that she spent about six hours a day helping care for him, doing such things as reading to him and cleaning him up if he vomited or had accidents from his chemotherapy. Asked if she had any income, she said that she received $160 per month from Home Support Services as compensation for caring for her grandson. Plaintiff said that she was able to drive, go the supermarket, and drove herself and her grandson to doctor's appointments. Written reports submitted by plaintiff and her husband indicated that she prepared meals several times a week. She said she could walk a mile. [See AR 18-19].

The ALJ rejected plaintiff's subjective allegations that she was disabled because she cried all the time, heard voices, and could not pay attention, concentrate, or handle stress. The ALJ acknowledged that plaintiff had functionally limiting symptoms and was restricted to simple, repetitive work, but he rationally concluded that her allegations of disabling symptoms were inconsistent with the objective medical evidence and with specific observations about her functional abilities made by her treating psychiatrist, Dr. Multani. [AR 19].

The ALJ did not arbitrarily discredit plaintiff's subjective complaints. His credibility finding is supported by substantial evidence and free of legal error.

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

DATED: October 6, 2008

_____
ANDREW J. WISTRICH
United States Magistrate Judge